**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION**

SHANNON M. PETERS,

              Plaintiff,

vs.

MICHELLE RISDAL, LEE
BLANCHARD, JONATHON
HATFIELD, and CARLOS LUCERO,
Individually and as Deputy Sheriffs/Jailers
of Woodbury County, Iowa,

              Defendants.

No. C 12-4070-MWB

**MEMORANDUM OPINION AND
ORDER REGARDING THE PARTIES'
MOTIONS IN LIMINE**

**<u>FILED UNDER SEAL</u>**

---

**TABLE OF CONTENTS**

I.    **INTRODUCTION**............................................................2

II.   *LEGAL ANALYSIS* .....................................................4
    A.   *Relevance And Prejudice Standards For Admissibility* .....................4
        1.   *Rules 401, 402, and 403* .................................................4
        2.   *The effect of the summary judgment ruling on
            evidence admissible at trial* ...............................................7
            a.   *Evidence intended to dispute issues or claims
                decided as a matter of law* ...................................7
            b.   *Evidence offered to dispute facts deemed
                admitted* ..........................................................11
    B.   *Peters's Supplemental Motion In Limine* .....................................15
        1.   *Evidence of Peters's involvement in criminal
            conduct* ..........................................................15
        2.   *Evidence of Peters's failed drug test* ..................................16
    C.   *The Defendant Officers' Omnibus Motion* ................................18
        1.   *Evidence disputing admitted facts* ....................................18

2. *Expert evidence from Victor Lofgreen* ................................ *19*
3. *Use of the terms "strip search" or "search"* ........................ *23*
4. *Evidence of alleged misconduct other than head "bashing"* ........................................................................ *25*
5. *Evidence of the reason for Peters's arrest* ........................... *28*
6. *Other pre- and post-incident evidence* ............................... *30*
7. *Evidence from other cases* ............................................... *35*
8. *Testimony of the jail administrator* .................................. *36*
9. *Evidence of the Defendant Officers' mental states* ................. *38*
10. *The video recording of the booking incident* ........................ *39*
11. *Evidence relevant only to a dismissed issue, claim, or party* ......................................................................... *41*
12. *Evidence of damages for psychological injury* ...................... *43*

III. *CONCLUSION* ............................................................................. *44*

## I.    INTRODUCTION

In this action pursuant to 42 U.S.C. § 1983, plaintiff Shannon Peters, a female arrestee, asserted claims of various constitutional violations against the County, the former County Sheriff, and various jail officers (the Defendant Officers) arising from her treatment during her booking for a misdemeanor violation of a no contact order on May 27, 2012. In my October 25, 2013, Memorandum Opinion And Order Regarding Plaintiff's Motion To Exclude Expert Testimony And Report Of Donald Leach, II, And Defendants' Motions For Summary Judgment (docket no. 62), I granted summary

judgment in favor of the County and the former County Sheriff on all claims, granted summary judgment in favor of the Defendant Officers on Peters's "violation of privacy rights/strip search" claim, and concluded that this case will proceed to trial only on Peters's claims of "excessive force" and "free speech retaliation," and only against the Defendant Officers. I also explained that, on the record presented here, Peters can prevail on her "free speech retaliation" claim only if she first prevails on her "excessive force" claim. *See Peters v. Woodbury Cnty., Iowa*, ___ F. Supp. 2d ___, 2013 WL 5775027, *65 (N.D. Iowa Oct. 25, 2013).

Trial in this matter is set to begin on December 16, 2013. In anticipation of trial, the parties have filed motions in limine. The first motion now before me[1] is Peters's November 6, 2013, Supplemental Motion In Limine (docket no. 65), seeking the exclusion of two categories of evidence. The Defendant Officers filed a Resistance (docket no. 70) to that Supplemental Motion on November 13, 2013. The second motion now before me is the Defendant Officers' November 6, 2013, Omnibus Motions In Limine (Omnibus Motion) (docket no. 67), seeking the exclusion of nineteen categories of evidence, mostly on the grounds that the evidence was no longer relevant in light of my summary judgment ruling. Peters filed a Resistance (docket no. 73) to that Omnibus Motion on November 20, 2013, and the Defendant Officers filed a Reply (docket no. 77) in further support of their Omnibus Motion on November 27, 2013. I will consider these motions in turn. First, however, I will summarize the standards for

---

[1] Peters filed a Motion In Limine (docket no. 61) on October 21, 2013, but the parties entered into a Stipulation Regarding Plaintiff's Motion In Limine (docket no. 63) on October 30, 2013, and I entered an Order (docket no. 64), on November 4, 2013, pursuant to the parties' Stipulation recognizing that the Motion In Limine was granted in part and withdrawn in part.

admissibility of evidence based on relevance and the balance of probative value versus prejudice, as the parties' evidentiary challenges rely primarily on these standards.

## II.    LEGAL ANALYSIS

### A.    Relevance And Prejudice Standards For Admissibility

#### 1.    Rules 401, 402, and 403

Rule 401 of the Federal Rules of Evidence defines relevant evidence as evidence that "(a) . . . has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Rule 402 provides that relevant evidence is generally admissible, but irrelevant evidence is not. Rule 403 provides for exclusion of even relevant evidence on various grounds, as follows:

> The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

FED. R. EVID. 403. "Under Rule 403, district courts have broad discretion to assess unfair prejudice, and are reversed only for an abuse of discretion." *United States v. Myers*, 503 F.3d 676, 681 (8th Cir. 2007) (citing *United States v. Henderson*, 416 F.3d 686, 693 (8th Cir. 2005), *cert. denied*, 546 U.S. 1175, 126 S. Ct. 1343, 164 L. Ed. 2d 57 (2006)); *accord United States v. Muhlenbruch*, 634 F.3d 987, 1001 (8th Cir. 2011) ("We review the district court's decision not to exclude evidence under Rule 403 for an abuse of discretion.").

More specifically, as to Rule 403, the Eighth Circuit Court of Appeals has explained,

> [U]nder Rule 403, the [challenged evidence's] probative value must be *substantially* outweighed by *unfair* prejudice. "Evidence is not unfairly prejudicial because it tends to prove guilt, but because it tends to encourage the jury to find guilt from improper reasoning. Whether there was unfair prejudice depends on whether there was an undue tendency to suggest decision on an improper basis." *United States v. Farrington*, 499 F.3d 854, 859 (8th Cir. 2007) (quotations omitted).

*Muhlenbruch*, 634 F.3d at 1001 (emphasis in the original); *Myers*, 503 F.3d at 681 ("Rule 403 'does not offer protection against evidence that is merely prejudicial in the sense of being detrimental to a party's case. The rule protects against evidence that is unfairly prejudicial, that is, if it tends to suggest decision on an improper basis.'" (quoting *Wade v. Haynes*, 663 F.2d 778, 783 (8th Cir. 1981), *aff'd sub nom. Smith v. Wade*, 461 U.S. 30, 103 S. Ct. 1625, 75 L. Ed. 2d 632 (1983)). The Advisory Committee Notes to Rule 403 explain that a decision on an "improper basis" is "commonly, though not necessarily, an emotional one." FED. R. EVID. 403, Advisory Committee Notes; *see also United States v. Jiminez*, 487 F.3d 1140, 1145 (8th Cir. 2007) (quoting this note); *United States v. Dierling*, 131 F.3d 722, 730-31 (8th Cir. 1997) (considering whether evidence was unfairly prejudicial, because it might lead to a decision on an improper basis, where it purportedly had no connection to the charged offense and revealed grisly or violent behavior that made the defendant appear "dangerous"). Unfairly prejudicial evidence, inviting a decision on an improper basis, has also been described as evidence that is "'so inflammatory on [its] face as to divert the jury's attention from the material issues in the trial.'" *United States v. Adams*, 401

F.3d 886, 900 (8th Cir. 2005) (quoting *United States v. Shoffner*, 71 F.3d 1429, 1433 (8th Cir. 1995)).

Where evidence may otherwise be inadmissible pursuant to Rule 403, the Eighth Circuit Court of Appeals and the Federal Rules of Evidence recognize that a limiting instruction on the proper uses of certain evidence may mitigate potential prejudice from such evidence and allow it to be admitted. *See, e.g, United States v. Cowling*, 648 F.3d 690, 699 (8th Cir. 2011) ("Moreover, the risk of unfair prejudice was reduced by a cautionary instruction to the jury, given when the evidence was first admitted."); *United States v. Young*, 644 F.3d 757, 761 (8th Cir. 2011) (concluding that the district court did not abuse its discretion in admitting evidence for the limited purpose set forth in its instruction); *United States v. Walker*, 470 F.3d 1271, 1275 (8th Cir. 2006) ("[A] limiting instruction [concerning proper use of evidence of a prior conviction] diminishes the danger of unfair prejudice arising from the admission of the evidence."); *see also* FED. R. EVID. 105 (requiring a limiting instruction when the court admits evidence for a limited purpose). The court has also recognized that limiting the amount of evidence, while excluding evidence that might prejudicially divert the jury's attention from the issues in the case, also mitigates any potential for unfair prejudice. *See United States v. Lemon*, 239 F.3d 968, 972 (8th Cir. 2001) (holding that, where the district court admitted a limited amount of gang-related evidence that was relevant to the defendant's "mere presence" defense, but excluded evidence of his drive-by shooting conviction, which might have prejudicially diverted the jury's attention from the constructive possession issues central to the case, the district court had not abused its discretion in admitting the limited gang-related evidence).

### 2.     The effect of the summary judgment ruling on evidence admissible at trial

Here, the Defendant Officers challenge several categories of evidence on the ground that they are irrelevant or that their probative value is outweighed by their potential for unfair prejudice, in light of my summary judgment ruling. I find that the effect of the summary judgment ruling on the evidence admissible at trial depends on whether the evidence is offered to dispute *claims and issues* that were decided as a matter of law or to dispute *facts* deemed admitted by Peters's failure to respond properly to the Defendant Officers' Statement of Undisputed Facts.

#### a.     Evidence intended to dispute issues or claims decided as a matter of law

I have considered the admissibility at trial of evidence intended to dispute *issues* on which I have previously ruled as a matter of law at summary judgment in a case involving an insured's claim of first-party bad faith denial of workers compensation benefits and the insurer's assertion that the claim was "fairly debatable." *See Niver v. Travelers Indem. Co. of Ill.*, 433 F. Supp. 2d 968, 997 (N.D. Iowa 2006) (*Niver II*). Specifically, in a ruling on the parties' cross-motions for summary judgment, *Niver v. Travelers Indem. Co. of Ill.*, 412 F. Supp. 2d 966 (N.D. Iowa 2006) (*Niver I*), I noted that the defendant insurance company had "not properly disputed any factual statements in the plaintiff's Statement of Undisputed Material Facts In Support [Of] Plaintiff's Motion For Summary Judgment And Resistance To Defendant's Second Amended And Substituted Motion For Summary Judgment (docket no. 164-4), because the defendant's Response (docket no. 168-2) cites no portion of the record in support of any denials or qualifications as required by [then] N.D. IA. L.R. 56.1(b)." *Niver I*, 412 F. Supp. 2d at 968 n.1. As to disputed *facts*, I concluded as follows:

> [T]he defendant's "failure to respond, with appropriate
> citations to the appendix, to an individual statement of
> material fact constitutes an admission of that fact." N.D. IA.
> L.R. 56.1(b). Notwithstanding the authorization of the local
> rule to deem admitted all factual statements to which no
> proper response has been made, the court has, in an
> abundance of caution, perused the record with care to
> determine what facts are genuinely disputed between the
> parties and whether those factual disputes are material to the
> cross-motions for summary judgment on the merits of the
> plaintiff's bad faith claim.

*Niver I*, 412 F. Supp. 2d at 968 n.1. Thus, in *Niver I*, I did not simply deem facts

admitted by the insurer's failure to respond properly to the insured's factual statements,

but considered whether the record demonstrated genuine issues of material fact. I

ultimately granted summary judgment in favor of the insured to the effect that the

insurer could not "fairly debate" the insured's claim for workers compensation

benefits, but left the question of damages for a subsequent jury trial. *Id*. at 993-94.

In *Niver II*, a subsequent ruling on motions in limine prior to the jury trial on

damages, I discussed the impact of my prior disposition of *issues* on summary

judgment, as follows:

> Again, Travelers is simply wrong about what issues
> can be presented to the jury. It is too late for Travelers to
> argue to the jury, based on any evidence acquired ever, that
> Niver's claim was fairly debatable, because the court has
> already ruled that, as a matter of law, Travelers could not
> reasonably debate, and knew that it could not reasonably
> debate, Niver's claim during and after July 2001. *If
> Travelers ever had information acquired after October 11,
> 2002, showing a basis for fairly debating Niver's claim,
> Travelers has either failed to present any such information
> or has failed to convince the court that such information*

> demonstrated that Niver's claim was fairly debatable during
> and after July 2001. Travelers cannot pretend that such
> information exists, never having disclosed it as required by
> the rules of discovery and never having previously relied
> upon it in these or any other proceedings, to attempt to
> reopen an issue that the court has decided as a matter of law
> on a summary judgment record that the parties represented
> to be complete. Also, Travelers has not previously
> represented, and is not now representing, that Niver's claim
> was fraudulent, based on evidence of fraud obtained only
> after the workers compensation proceedings had terminated.
> To allow Travelers to rely at trial on some "secret" evidence
> purportedly acquired after October 11, 2002, which
> Travelers even now has not identified, would be unfairly
> prejudicial to an extent that outweighs any marginal
> relevance that evidence might have to the questions actually
> at issue at trial. See Fed.R.Evid. 403 (relevant evidence
> may be excluded if its probative value is outweighed by its
> potential for unfair prejudice).

*Niver II*, 433 F. Supp. 2d at 997 (emphasis added). For this reason, I granted the insured's motion to exclude any evidence acquired by the insurer after the date of the workers compensation arbitration held on October 11, 2002. *Id*. at 998. Thus, *Niver II* teaches that it is proper to exclude evidence that is offered to dispute a *claim or defense* or a *legal issue* that has already been determined as a matter of law at summary judgment, pursuant to Rule 403, but neither *Niver I* nor *Niver II* teaches that a court is required to bind a party at trial to *certain facts* that were deemed admitted at summary judgment by failure of a party to dispute them properly.

I also find the decision of the Eighth Circuit Court of Appeals in *Blair v. Wills*, 420 F.3d 823 (8th Cir. 2005), to be instructive here on the admissibility of evidence that relates to dismissed *claims* at the trial of remaining claims, although *Blair* is not a

Rule 403 case.  In *Blair*, the court considered whether the district court had improperly denied the defendants' motion for new trial, which had been based on the plaintiff's counsel's repeated introduction of evidence concerning alleged misconduct of the defendants that was irrelevant to the plaintiff's remaining claims.  *Blair*, 420 F.3d at 830.  The appellate court observed,

> Although the District Court repeatedly reminded Blair's counsel to focus on the claims remaining in the case—the FLSA and battery claims—and to refrain from injecting irrelevant and prejudicial evidence into the proceeding, these admonitions were unsuccessful. *Unfortunately, the ongoing introduction of irrelevant information, the repeated objections by Appellees, and the frequent warnings and admonitions by the District Court likely gave jurors the impression that something more happened than they were being told. When the case is a close one, the possibility that improper conduct could have influenced the jury's verdict is increased. Silbergleit [v. First Interstate Bank of Fargo]*, 37 F.3d [394,] 398 [(8th Cir.1994)]. The fact that the jury awarded Blair $20,000 on relatively weak evidence of battery supports our conclusion that Gerhardt was prejudiced by the misconduct of Blair's counsel.

> The line of questions posed by Blair's counsel over the course of the two-and-a-half-day trial emphasized irrelevant information having no bearing on the issues remaining in the case and demonstrated a persistent effort by Blair's counsel to get this information before the jury, despite repeated admonitions by the District Court. Although the District Court made a valiant attempt to rein in Blair's attorney, the improper and prejudicial questioning continued. *We believe that the combined effect of these questions was to present to the jury an abundance of irrelevant evidence that had no bearing on the merits of the remaining claims and served only to prejudice the jury*

> against Gerhardt. Consequently, we conclude that the
> District Court abused its discretion by denying Gerhardt's
> motion for a new trial on Blair's battery claim.

*Blair*, 420 F.3d at 830 (emphasis added). The decision in *Blair* suggests that a trial court must be vigilant to exclude evidence that relates to dismissed *claims* or misconduct of a party that is irrelevant or only marginally relevant to remaining claims, because of the prejudicial effect of such evidence. *See also Lamb Eng'g & Constr. Co. v. Nebraska Pub. Power Dist.*, 103 F.3d 1422, 1432-33 (8th Cir. 1997) (holding that evidence that was relevant only to a voluntarily withdrawn breach-of-contract claim should not have been admitted to determine damages owed under a termination clause, and noting that the error in admitting such evidence "caused, or contributed to, a prejudicial conclusion" by the jury); *Dethmers Mfg. Co., Inc. v. Automatic Equip. Mfg. Co.*, 73 F. Supp. 2d 997, 10002-03 (N.D. Iowa 1999) (concluding that evidence that was only marginally relevant to remaining claims should be excluded pursuant to Rule 403, on the ground that it could confuse the issues for the jury).

I conclude that evidence may not be offered to dispute *claims or issues* that I have determined as a matter of law at summary judgment.

### b.    *Evidence offered to dispute facts deemed admitted*

The cases discussed above do not answer the question of the binding or non-binding effect at trial of *facts* deemed admitted at summary judgment by a party's failure to respond properly to an opposing party's factual allegations. Local Rule 56(b) states, "The failure to respond, with appropriate citations to the appendix, to an individual statement of material fact constitutes an admission of that fact." N.D. Iᴀ. L.R. 56(b). It does not make clear, however, whether that "admission" is only for summary judgment purposes or is also binding at a subsequent jury trial on remaining

claims or defenses. The Defendant Officers cite *Tobey v. Extel/JWP, Inc.*, 985 F.2d 330, 333 (7th Cir. 1993), for the proposition that "[a]n admission trumps evidence, rather than vice versa," including admission by failure to contest a party's statement of uncontested facts, but that statement is in the context of evidence on which a court may rely at summary judgment, not in the context of what evidence can be considered at trial. *Id.* Some district courts have held that *facts* expressly admitted at summary judgment are binding at trial, but others have not. *Compare Seid v. Reeves*, No. 8:05CV207, 2006 WL 695455, *1 (D. Neb. March 17, 2006) (unpubl. op.) (Kopf, J.); *with Americans United for Separation of Church and State v. Prison Fellowship Ministries*, 395 F. Supp. 2d 805, 808-09 (S.D. Iowa 2005) (Pratt, J.) (holding, on a motion to deem all admissions in response to a statement of material facts at summary judgment to be binding at trial, that a stipulation of facts for trial was a "judicial admission," binding at trial, but "any other admission" was an "evidentiary admission," subject to rebuttal or explanation at trial by the party against whom it is offered, but "should not be lightly discarded," unless clearly made as a mere concession for the sake of argument). It is even less clear whether facts *deemed admitted* at summary judgment by a party's failure to respond or to respond properly should be binding at trial.

I note that Rule 36 provides for deeming certain facts stated in a discovery request for admissions to be admitted, if the party to whom the request is submitted either fails to respond, FED. R. CIV. P. 36(a)(3), or the court determines that an answer does not comply with the requirements of the rule (in subsection (a)(4)), FED. R. CIV. P. 36(a)(6). Furthermore, Rule 36(b) states,

> **(b) Effect of an Admission; Withdrawing or Amending It.** A matter admitted under this rule is

> conclusively established unless the court, on motion, permits
> the admission to be withdrawn or amended. Subject to Rule
> 16(e), the court may permit withdrawal or amendment if it
> would promote the presentation of the merits of the action
> and if the court is not persuaded that it would prejudice the
> requesting party in maintaining or defending the action on
> the merits. An admission under this rule is not an admission
> for any other purpose and cannot be used against the party in
> any other proceeding.

FED. R. CIV. P. 36(b). The advisory committee notes to the 1970 amendments to Rule 36 explain that subdivision (b) had not previously "indicate[d] the extent to which a party is bound by his admission," but

> The new provisions give an admission a *conclusively binding effect, for purposes only of the pending action*, unless the admission is withdrawn or amended. In form and substance a Rule 36 admission is comparable to an admission in pleadings or a stipulation drafted by counsel for use at trial, rather than to an evidentiary admission of a party. Unless the party securing an admission can depend on its binding effect, he cannot safely avoid the expense of preparing to prove the very matters on which he has secured the admission, and the purpose of the rule is defeated.

FED. R. CIV. P. 36, advisory committee notes to 1970 amendments (emphasis added). Thus, a *fact* deemed admitted pursuant to Rule 36(b) is binding "for purposes . . . of the pending action," which includes trial, and the party against whom the fact is deemed admitted must seek leave to withdraw or amend the admission. *See, e.g., McNeil v. AT & T Universal Card*, 192 F.R.D. 492, 494 & n.4 (E.D. Penn. 2000) (holding that matters deemed admitted by failure to respond to requests for admissions were binding on summary judgment and at trial).

A party can have little doubt that facts *deemed admitted by failure to respond to a request for admissions* will be binding at trial, *see* FED. R. CIV. P. 36(b), that is, that facts deemed admitted by failure to respond to a request for admissions are "*judicial admissions.*"  On the other hand, I agree with Judge Pratt's determination, in *Americans United for Separation of Church and State*, 395 F. Supp. 2d at 808-09, that facts *admitted at summary judgment*, expressly or by failure to respond to an opposing party's statement of undisputed facts, are "*evidentiary admissions*" that should not be lightly disregarded, but, nevertheless, should, be subject to rebuttal or explanation at trial by the party against whom they are offered.

I also find it instructive that a party may not offer an affidavit in resistance to summary judgment that contradicts or is inconsistent with prior deposition testimony, but may elaborate on matters addressed in a prior deposition, *see, e.g., Popoalii v. Correctional Med. Servs.*, 512 F.3d 488, 498 (8th Cir. 2008), and a party may be impeached at trial with evidence of a prior inconsistent statement, made under oath and subject to cross-examination, including a statement that is evasive or a change of position, *see, e.g., United States v. Matlock*, 109 F.3d 1313, 1319 (8th Cir. 1997) (citing Rule 801(d)(1)(A)).  Therefore, I believe that any attempt to dispute *facts* admitted at summary judgment, whether expressly or by failure to respond properly to an opposing party's statement of undisputed facts, should be open to rebuttal with the prior admission, for the same reasons that testimony at trial should be open to impeachment with prior inconsistent statements pursuant to Rule 801(d)(1)(A).  Even so, the admitted facts may be elaborated.

With these standards for the admissibility of evidence in mind, I turn to consideration of the parties' motions in limine.

### B.     *Peters's Supplemental Motion In Limine*

In her Supplemental Motion In Limine, Peters seeks exclusion of two categories of evidence. The Defendant Officers resist a blanket exclusion of both categories of evidence.

### 1.     *Evidence of Peters's involvement in criminal conduct*

First, Peters seeks to exclude any references to her arrest for or involvement or alleged involvement in any criminal conduct of any nature occurring prior to the May 27, 2012, booking incident from which her claims arise, but she contends that evidence of the simple misdemeanor for violation of a no contact order for which she was arrested on May 27, 2012, *should be* admissible. She argues that evidence of any prior arrest and/or incarceration has no bearing on the issues at hand, which she contends are limited to whether her constitutional rights were violated by the use of excessive force or retaliation for the exercise of First Amendment rights. Thus, she contends, reference to a prior arrest for or involvement or alleged involvement in any criminal conduct is not admissible and must be excluded under Rule 403. The Defendant Officers contend that *all* of Peters's past criminal conduct, *including* evidence of her violation of the no contact order, should be excluded. They point out that they have also moved to exclude evidence of Peters's violation of the no contact order.

For the moment, I will address only the admissibility of any evidence of Peters's criminal conduct *prior to* her arrest and pretrial incarceration on May 27, 2012, on the charge of violating the no contact order. I agree with the parties that such evidence is not relevant, within the meaning of Rule 401. I also agree with the parties that, if such evidence has some marginal relevance, its probative value is outweighed by the

potential prejudice of evidence that a jury might take to mean that the plaintiff is a "criminal," so that it should be excluded pursuant to Rule 403. *See Muhlenbruch*, 634 F.3d at 1001 (explaining that evidence may be excluded pursuant to Rule 403 if it has an unfair tendency to suggest decision on an improper basis).[2]

Thus, this part of Peters's Supplemental Motion is granted, at this point, to the extent that I will exclude evidence of criminal conduct *other than* her violation of the no contact order. I will address the admissibility of evidence of her violation of the no contact order, in the context of the parties' more thorough briefing of the issue on the Defendant Officers' Omnibus Motion. *See, infra*, Section II.C.5, beginning on page 28.

### 2.     *Evidence of Peters's failed drug test*

In her Supplemental Motion, Peters also seeks to exclude any reference to the drug test that she failed at the time that she visited the Woodbury County Jail to make arrangements for electronic monitoring on her conviction for violation of the no contact

---

[2] Because the Defendant Officers seek to exclude this prior "bad acts" evidence, they also have not asserted that there is any proper purpose for admitting such evidence under Rule 404(b). *See* FED. R. EVID. 404(b) (requiring exclusion of evidence of past "bad acts" for the purpose of showing a person's "character," but permitting evidence of past "bad acts" for "another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absences of mistake, or lack of accident"). Even if this prior "bad acts" evidence had been offered pursuant to Rule 404(b), the admissibility of such evidence would ultimately still turn on the same balance of probative value against the potential for unfair prejudice required under Rule 403, *see Batiste–Davis v. Lincare, Inc.*, 526 F.3d 377, 380 (8th Cir. 2008) (noting that the third requirement for admissibility of "bad acts" evidence under Rule 404(b), "whether the probative value exceeds the unfair prejudice," is "an analysis equivalent to that in Rule 403"), so I would still exclude it.

order. She contends that such evidence is precisely the kind of highly prejudicial evidence, with limited probative value, that should be excluded pursuant to Rule 403. The Defendant Officers contend that, if I do not grant the part of their Omnibus Motion seeking exclusion of evidence of Peters's alleged psychological damage and testimony of one of her experts, Dr. Kunal Patra, on that issue, evidence of Peters's failed drug test may be relevant and admissible on the issue of damages, where Dr. Patra has recognized that recovery from alleged Post-Traumatic Stress Disorder (PTSD), one basis for Peters's emotional damages claim, may be the presence or absence of concomitant alcohol or drug abuse.

I agree with Peters that, in the absence of a felony drug conviction, evidence of her drug use is unlikely to be relevant or admissible in this case. On the other hand, I also agree with the Defendant Officers that evidence of her drug use may be relevant to dispute evidence of the source of emotional distress for which Peters seeks damages. That said, I will grant Peters's motion to exclude such evidence pursuant to Rule 403 without prior leave of the court at trial, because, until "the door is opened" for such evidence, it would be unfairly prejudicial in that it might invite a decision on the improper basis that Peters is a drug abuser. *See Muhlenbruch*, 634 F.3d at 1001 (explaining that evidence may be excluded pursuant to Rule 403 if it has an unfair tendency to suggest decision on an improper basis). Thus, the Defendant Officers must demonstrate, outside of the presence of the jury, that "the door has been opened," for example, by Peters offering evidence of her psychological injuries, before I will allow the Defendant Officers to offer evidence of Peters's alleged drug use and, specifically, her failure of the drug test at the time of her application for electronic monitoring, to

show that there are other sources for her alleged psychological injuries or that her drug use may have impeded treatment of those injuries.

### C. The Defendant Officers' Omnibus Motion

As mentioned, above, in their Omnibus Motion, the Defendants Officers seek to exclude nineteen categories of evidence. I will consider the admissibility of these categories of evidence, in turn.

#### 1. Evidence disputing admitted facts

First, the Defendant Officers list several facts that I deemed Peters to have admitted at summary judgment by failing to dispute them in the manner required by N.D. IA. L.R. 56(b). The Defendant Officers argue that such admissions are now binding on Peters at trial. Peters argues that she has no intention of disputing the admitted facts, but is concerned that the Defendant Officers are attempting to limit relevant testimony that explains those admissions and places them in context.

I reiterate my conclusion, in Section II.A.2., above, at page 11, that evidence offered to dispute *issues or claims* on which I have ruled as a matter of law is irrelevant to a subsequent jury trial on remaining issues. *See Niver II*, 433 F. Supp. 2d at 997; *Blair*, 420 F.3d at 830. As to *facts* admitted at summary judgment, expressly or by failure to respond to an opposing party's statement of undisputed facts, I also reiterate my conclusion, at page 14, that those facts are "evidentiary admissions" that should not be lightly disregarded, but, nevertheless, should, be subject to rebuttal or explanation at trial by the party against whom they are offered. *See Americans United for Separation of Church and State*, 395 F. Supp. 2d at 808-09. Thus, the facts deemed admitted at

summary judgment by Peters's failure to respond to them properly are not conclusively binding at trial.

Moreover, I do not believe that it would be unfairly prejudicial to allow a party to elaborate on additional facts surrounding an admitted fact, for the reasons also stated, above, at page 14. To put it another way, while I deemed certain facts to be admitted at summary judgment, pursuant to N.D. IA. L.R. 56(b), I did not deem those facts to be the *entire universe* of relevant facts or to preclude elaboration of factual circumstances beyond the facts deemed admitted.[3] I acknowledge that the line between elaborating the facts and attempting to rebut factual admissions may be something less than bright, but I decline the Defendant Officers' attempt to *limit* the factual circumstances to the facts that I deemed admitted at the summary judgment stage of the proceedings.

Therefore, this part of the Defendant Officers' Omnibus Motion is denied, and Peters may attempt to rebut or explain at trial facts that I deemed admitted at summary judgment by her failure to respond properly to the Defendant Officers' statements of undisputed facts and she may also offer evidence that elaborates the factual circumstances surrounding facts deemed admitted.

## 2. *Expert evidence from Victor Lofgreen*

Next, the Defendant Officers seek to exclude evidence from Victor Lofgreen, one of Peters's experts, because it is not relevant to any remaining issues. They argue

---

[3] I have purposefully avoided use of the phrase "testimony that explains and places into context those admissions" used by Peters in her Resistance. I do not think that Peters is entitled to explain to the jury how or why she admitted certain facts at summary judgment or otherwise to explain the "context" *of the admissions*. She may be allowed the opportunity to show that facts that she admitted were part of a larger factual context, however.

that Dr. Lofgreen opined at length about the "intrusion on privacy/strip search" claim that is no longer at issue, but did not provide any opinions relevant to the use of excessive force, which is the central issue on the remaining claims, apart from a conclusory statement at the end of his report. Allowing him to offer opinions on excessive force now, they contend, would allow him to offer "new" opinions that have never been properly disclosed. In the alternative, the Defendant Officers contend that any testimony from Dr. Lofgreen should be limited in the same way that I have previously limited testimony of their expert, Donald Leach II. In response, Peters concedes that Dr. Lofgreen's testimony must be limited to facts and opinions necessary to resolve the issues pending for trial, but contends that those issues include "the manner the strip search was performed" and Peters's "objections to her arrest and her objections to being told to undress in front of [officers]," which are matters that Dr. Lofgreen addressed in his report. She also concedes that Dr. Lofgreen's testimony should be limited in the same way that I have previously limited Mr. Leach's testimony.

As I noted in my summary judgment ruling, "A district judge's decision to exclude or allow expert testimony is reviewed for abuse of discretion." *Peters*, ___ F. Supp. 2d at ___, 2013 WL 5775027 at *8 (citing *United States v. Schwarck*, 719 F.3d 921, 923-24 (8th Cir. 2013)); *see also id.* at *8-*10 (stating the standards for admissibility of expert testimony). The simpler question concerning the admissibility of evidence from Peters's expert is whether any testimony from Dr. Lofgreen should be subject to the same limitations placed on the testimony of the Defendant Officers' expert, Mr. Leach. *See id.* at *15. The answer, of course, is yes.

The more difficult question is whether Dr. Lofgreen has offered any relevant opinions on the remaining issues for trial. I have reviewed pages 20 to 29 of Dr. Lofgreen's report, cited by Peters as containing relevant opinions on "the manner the strip search was performed," and I find precious few opinions that are relevant to the remaining claims of "excessive force" and "free speech retaliation." I made clear in my summary judgment ruling that the particular conduct at issue on the "excessive force" claim that was arguably violative of Peters's rights was "bashing" her head against hard surfaces, *see, e.g., Peters*, ___ F. Supp. 2d at ___, 2013 WL 5775027 at *57, and that the particular conduct at issue on the "retaliation" claim that was arguably retaliatory was also "bashing" Peters's head against hard surfaces, *see, e.g., id.* at 62. I do not see where Dr. Lofgreen even mentions an allegation that Peters's head was "bashed" against hard surfaces or where he offers any permissible opinions about whether "bashing" an arrestee's head against hard surfaces would constitute "excessive force" or be "retaliatory," in light of the arrestee's alleged conduct.

Instead, Dr. Lofgreen offers, at most, "general" opinions that Peters's clothes were "forcibly" removed, *see, e.g.,* Lofgreen Report at 24, which I have already held is not enough to constitute a constitutional violation in this case. He also states specifically identified "opinions" that "Officer Risdal and five male officers took Plaintiff Shannon M. Peters down to the floor [and] physically ripped her clothes from her body, and left her lying with a paper suicide prevention uniform on her naked body," *id.* at 25-26, ¶ 4, but, again, I have concluded that none of this conduct constitutes a constitutional violation; that "[t]he application of force was unauthorized because Plaintiff Shannon M. Peters had not presented any threat to the safety and security of the W.C. jail, staff, inmates or herself," *id.* at 26, ¶ 8, and "that the

Defendants in this case used excessive force," *id.* at 28, ¶ 14, but neither opinion identifies the particular conduct of head "bashing" as the force that was excessive or unauthorized.[4]  There are several paragraphs of "opinions" by Dr. Lofgreen that certain evidence suggests that Peters was "strip searched" in retaliation for her "objections," *see id.* at 26, ¶¶ 5-6, but none that contain an opinion that the head "bashing" was the retaliatory conduct, and that is the only conduct that I concluded was arguably unconstitutional retaliation.

Dr. Lofgreen also offers "general" opinions that Jail Standard Operating Guideline (JSOG) 133 requires that personal searches be "conducted in a matter [sic] to avoid unnecessary force," Lofgreen Report at 22, and that JSOG 133 also states that "searches are not to be used for punishment or harassment," *id.*  I do not believe that it requires an "expert" to inform the jurors of what JSOGs state, where Dr. Lofgreen has offered no opinion that the only conduct that I have held is relevant, the alleged head "bashing," would violate those JSOGs.  *See Peters*, ___ F. Supp. 2d at ___, 2013 WL 5775027 at *9 (recognizing that helpfulness to the trier of fact is the touchstone for admissibility of expert testimony); *and compare id.* at *15 (holding that an expert could permissibly testify as to what routine and acceptable correctional practices in jails *are*, and could even respond to abstract or hypothetical questions by opining that the force described was or was not reasonable in the circumstances described in the question).

---

[4] Dr. Lofgreen also offers opinions about the facts and the conduct of the parties, particularly that the Defendant Officers purportedly "ignored" Peters's concerns, which simply invite the jurors to adopt his view of the facts—which are plainly inadmissible expert opinions.

In short, I will grant the part of the Defendant Officers' Omnibus Motion seeking the exclusion of Dr. Lofgreen's opinions, because Peters has failed to identify any of his properly disclosed opinions that relate to remaining issues in the case.

### 3. Use of the terms "strip search" or "search"

The defendants also seek an order prohibiting Peters from using the terms "strip search" or "search" to describe the May 27, 2012, incident, because these terms are prejudicial to the Defendant Officers. Indeed, the Defendant Officers argue that I have already determined that whether or not there was a "strip search," there was no violation of Peters's privacy rights as a matter of law. In response, Peters states that, in light of my prior ruling that there was no "strip search," she is "comfortable" with my preference for describing the right at issue as an "intrusion" and/or a "violation" of "privacy rights." However, she argues that she was certainly "stripped" and that use of the terms "stripped" or "strip search" does not rise to the level of prejudice required for exclusion under Rule 403, because those terms are not so inflammatory as to divert the jury's attention from the material issues in the trial.

The first problem with Peters's argument is that no "intrusion on and/or violation of privacy rights" claim is at issue any longer in this action, because I granted summary judgment to all defendants on Peters's "violation of privacy rights/strip search" claim." *See Niver*, 433 F. Supp. 2d at 997; *Blair*, 420 F.3d at 830. The second problem is that Peters is flat wrong that evidence is only "unfairly prejudicial" if it is "so inflammatory on its face as to divert the jury's attention from the material issues in the trial." As explained above, in addition to being "inflammatory," evidence may be "unfairly prejudicial" if it invites a decision on an "improper basis," *see Muhlenbruch*, 634 F.3d at 1001, identified in the Advisory Committee Notes to Rule

403 as "commonly, though not necessarily, an emotional one," FED. R. EVID. 403, Advisory Committee Notes, and evidence may also be excluded if it is misleading or confuses the issues, FED. R. EVID. 403. Indeed, in my summary judgment ruling, I made clear that the objectionable nature of calling the incident in question a "strip search" or even a "search" was that it was, "at best, misleading, and at worst, invites jurors to decide the case on an improper, emotional basis." *Peters*, ___ F. Supp. 2d at ___, 2013 WL 5775027 at *31.

Although I did not insist upon the use of the labels "violation of privacy rights" or "intrusion on privacy" for Peters's claim in Count I by all parties at all times from the point of the summary judgment ruling forward, *id.*, Count I simply is no longer at issue. In the context of the *remaining claims*, referring to the incident in which Peters's clothing was forcibly removed as a "strip search" or a "search" is even more misleading and even more likely to invite a decision on the *remaining claims* on an improper basis of an emotional response to a "strip search." Indeed, no "search," not even a "technical" one, is at issue any longer. *See id.* (acknowledging that describing the removal of clothing in the presence of others was "technically" a "search"). I have also determined that the forcible removal of Peters's clothes was constitutionally permissible, so that the only question on her remaining claims of "excessive force" and "free speech retaliation" is whether the force used during the removal of her clothes— specifically, head "bashing"—was "excessive." Thus, I believe that the legally correct terms for the removal of Peters's clothing, for which the probative value is not outweighed by any potential prejudice, include "clothing exchange," "forced clothing exchange," "forcible removal of Peters's clothing," and even "forcibly stripping Peters," or slight variants, but do *not* include "strip search" or "search."

This part of the Defendant Officers' Omnibus Motion is granted.

### 4.  *Evidence of alleged misconduct other than head "bashing"*

The fourth through seventh categories of evidence that the Defendant Officers argue that I should exclude all involve evidence of alleged misconduct other than the alleged head "bashing."  Those categories of evidence are the following:  evidence in support of a claim that the Defendant Officers could not require Peters to remove her clothing and change into a jail jumpsuit; that the Defendant Officers' decision to use force to enforce the order was unlawful; that use of the mandibular control measure was unlawful; and that any other use of force up to the time that Peters alleges that her head was "bashed" was unlawful.  The Defendant Officers argue that I have already determined, on summary judgment, that there was no violation of Peters's rights, as a matter of law, in any of this conduct.

Peters argues that the Defendant Officers are confusing prior rulings on what claims will be submitted to the jury with rulings limiting how the claims will be identified, explained, or placed in context.  For example, she argues, the fact that she was stripped of her clothing may not be submitted as a constitutional violation for the jury to consider, but it should be admitted to explain and put into context the "excessive force" and "retaliation" claims that will be submitted.  She argues, further, that evidence of the Sheriff's Department's policies and procedures regarding when and how a correctional officer should observe a detainee take off his or her clothes should be admitted into evidence as such policies and procedures relate to her "retaliation" and "excessive force" claims, where such evidence gives credence to her insistence that she did not want to undress in front of correctional officers, even if they do not demonstrate a constitutional violation.  She also argues that such evidence helps to establish her

claim for damages by showing that policies and procedures, designed for her protections, were violated. Indeed, she argues that evidence that the Defendant Officers knew that they were violating their own policies and procedures could lead the jury to believe that they were doing so in retaliation for her exercise of her First Amendment Rights.

In reply, the Defendant Officers argue that they have no "policies or regulations," the jail does, and that there is no dispute that "bashing" a detainee's head while that detainee is not resisting is "excessive force" and that no jail policy allows such conduct. Nevertheless, they argue that the question on which Peters's claims turn is a factual one of whether Peters's head was, indeed, "bashed" while she was not resisting, and jail policies are not relevant to that question. They also argue that jail policies are not relevant to the "retaliation" claim, because, again, the only inquiry is whether the use of "excessive force" (in the form of head "bashing") was retaliation for Peters's complaints.

Peters is correct to the extent that she argues that what occurred is part of the context of her claims; indeed, it is the *res gestae*. *Cf. United States v. Fleck*, 413 F.3d 883, 890 (8th Cir. 2005) (criminal case explaining that evidence is *res gestae* if it shows the "context" of the charged offense). What the Defendant Officers seek to exclude, however, is not evidence of what happened, but Peters's arguments that anything that happened—other than the alleged head "bashing"—was unlawful. For this reason, I conclude that Peters's references to violation of regulations is not responsive to this part of the Defendant Officers' Omnibus Motion, and I will address it elsewhere, specifically, in Section II.C.6., below, beginning on page 30, when the admissibility of policies and regulations is properly at issue.

The Defendant Officers are correct that I have limited Peters's claims to "excessive force" and "free speech retaliation," and that I have further limited the question of what conduct constituted "excessive force" and what conduct constituted "retaliation" to the Defendant Officers' alleged "bashing" of Peters's head against hard surfaces. *See, e.g., Peters*, ___ F. Supp. 2d at ___, 2013 WL 5775027 at *57 & *62. Under these circumstances, argument that any other conduct was unlawful would be irrelevant, unfairly prejudicial, misleading, and confusing. *See Niver II*, 433 F. Supp. 2d at 997; *Blair*, 420 F.3d at 830. Indeed, like the plaintiff in *Blair*, Peters is attempting to get irrelevant evidence before the jury, which may lead the jury to the improper conclusion that more was going on than they were being told to consider. *Cf. Blair*, 420 F.3d at 830 (holding that the plaintiff's repeated attempts to introduce evidence of other allegedly wrongful conduct that was not relevant to the remaining claims prejudiced the jury against the defendants); *see also Lamb Eng'g & Constr. Co.*, 103 F.3d at 1432-33 (holding that evidence that was relevant only to a voluntarily withdrawn breach-of-contract claim should not have been admitted to determine damages owed under a termination clause, and noting that the error in admitting such evidence "caused, or contributed to, a prejudicial conclusion" by the jury); *Dethmers Mfg. Co., Inc.*, 73 F. Supp. 2d at 1002-03 (concluding that evidence that was only marginally relevant to remaining claims should be excluded pursuant to Rule 403, on the ground that it could confuse the issues for the jury).

Parts four through seven of the Defendant Officers' Omnibus Motion are granted.

## 5.    *Evidence of the reason for Peters's arrest*

The eighth category of evidence that the Defendant Officers argue should be excluded is evidence of the reason for Peters's arrest on May 27, 2012. The Defendant Officers argue that I have already ruled that the severity of the crime for which Peters was arrested is not relevant to issues in this case and that such evidence is not only irrelevant, but prejudicial, because it may confuse the jury. Peters responds that excluding this evidence will leave the jurors to speculate about the reasons for her arrest, and it would be prejudicial for the jurors to believe that she might have been arrested for a serious or violent offense, which might suggest that a greater amount of force was justified. She also argues that an explanation of the reason for her arrest is necessary to allow her to explain why she was complaining about the invalidity of her arrest. In reply, the Defendant Officers argue that there is no merit to Peters's arguments for admitting evidence of the reasons for her arrest, because it is sufficient to explain to the jury that Peters was complaining about her arrest and how she was acting at the time of the alleged head "bashing."

In my summary judgment ruling, I noted that "Peters . . . assert[ed], and told the Defendant Officers at the time of her booking, that she believed that the no contact order had been dropped, but she now admits that she was mistaken." *Peters*, ___ F. Supp. 2d at ___, 2013 WL 5775027 at *2. In my summary judgment ruling, I also made clear that the nature of the conduct for which Peters was arrested is not relevant *to whether the force used against her during the booking incident was "excessive"*; rather, where the alleged constitutional violation arose from an incident during detention, her conduct *at the time of the incident* was what was relevant to that determination. *See id.* at *47. I also opined that it was "likely" that it would be

appropriate to exclude at trial any reference to the minor offense for which Peters was arrested, because such evidence might mislead the jurors into believing that a minor offense reduces the amount of force that can reasonably be used against a detainee, without regard to the conduct of the detainee at the time of the incident in which force was used, which is the proper focus of their inquiry. *Id.* (citing Rule 403).

Upon further consideration, however, I now believe that the nature of the offense for which Peters was arrested is *res gestae* and that it does provide appropriate context for her complaints about her arrest. Moreover, I now believe that proper instructions on what factors *are* relevant to a determination of whether the amount of force used was "objectively reasonable," expressly including her conduct at the time of the incident and expressly excluding her conduct at the time of her arrest, would be appropriate to eliminate the potential prejudice that I identified in my summary judgment ruling. *See, e.g, Cowling*, 648 F.3d at 699 ("Moreover, the risk of unfair prejudice was reduced by a cautionary instruction to the jury, given when the evidence was first admitted."); *Young*, 644 F.3d at 761 (concluding that the district court did not abuse its discretion in admitting evidence for the limited purpose set forth in its instruction); *Walker*, 470 F.3d at 1275 ("[A] limiting instruction [concerning proper use of evidence of a prior conviction] diminishes the danger of unfair prejudice arising from the admission of the evidence."); *see also* Fed. R. Evid. 105 (requiring a limiting instruction when the court admits evidence for a limited purpose). Furthermore, evidence about the offense for which Peters was arrested should be very limited, in order to minimize prejudice from improper emphasis on facts of only marginal relevance. *See Lemon*, 239 F.3d at 972 (recognizing that limiting the amount of

evidence, while excluding evidence that might prejudicially divert the jury's attention from the issues in the case, also mitigates any potential for unfair prejudice).

Therefore, this part of the Defendant Officers' Omnibus Motion is denied, and the part of Peters's Supplemental Motion seeking to allow evidence of the offense for which she was arrested on May 27, 2012, reserved above, *see, supra*, page 16, is now granted, subject to an appropriate limiting instruction and limitation of the amount of such evidence.

### 6. *Other pre- and post-incident evidence*

The ninth through thirteenth categories of evidence that the Defendant Officers seek to exclude are all pre- or post-incident evidence. Those categories are the following: evidence about Peters's Medical Screening Form; evidence of Woodbury County's jail policies or procedures; evidence of the Defendant Officers' alleged failure to conduct "suicide" checks at the time intervals mandated in jail policies; evidence of the Defendant Officers' refusal of Peters's request for medical attention; and evidence of Peters's application for the electronic monitoring program and her incarceration starting November 6, 2012.

More specifically, as to evidence of the Medical Screening Form, the Defendant Officers argue that such evidence is not relevant, where I have determined, as a matter of law, that the Defendant Officers did not violate Peters's right to privacy by ordering her to disrobe, based on the totality of the circumstances, so that the Medical Screening Form cannot be offered to show that there was no legitimate reason for ordering her to disrobe. The Defendant Officers also argue that jail policies are not relevant, where they are jail employees who are not responsible for making those policies, and the *Monell* liability claims against the County and the former County Sheriff, the policy

makers, have been dismissed. As to the "suicide" checks evidence, the Defendant Officers argue that I have already determined, as a matter of law, that Peters has no "privacy violation" claim, to which this evidence was purportedly relevant to show that the reasons for "strip searching" Peters were pretextual. As to the evidence of Peters's request for medical attention, the Defendant Officers point out that Peters has not alleged any claim that the Defendant Officers violated her constitutional rights by refusing her request for medical attention, so that such evidence is irrelevant. Finally, as to evidence of Peters's application for electronic monitoring and her incarceration in November 2012, the Defendant Officers argue that such evidence is irrelevant, because I have already determined that Peters waived her claim for retaliation based on denial of "good time" credit.

Peters makes a blanket resistance to exclusion of all but the last of these categories of evidence: She argues that the Defendant Officers deny causing any injury to her and justify their actions against her by claiming that they had to "assault" her because they were worried that she would harm herself, and the evidence in question demonstrates that there was no basis for believing that she would hurt herself nor was there any other justification for the use of force. She argues that the falsity of the Defendant Officers' explanations for their conduct allows a fact finder to infer that they are covering up a retaliatory or other malign purpose for their conduct.

Peters's arguments for exclusion of most of these categories of evidence simply cannot stand in the face of my summary judgment ruling. In that ruling, I rejected Peters's "violation of privacy rights" claim, as a matter of law, so that there is no claim to which the evidence that Peters asserts shows that the reasons for "stripping" her were pretextual would be relevant. Indeed, in my summary judgment ruling, I rejected

Peters's argument that the booking forms, including the Medical Screening Form, and the other evidence identified by Peters concerning the *post*-incident conduct of the Defendant Officers showed there was no justification for strip-searching her or for the use of force to enforce that order. I explained that, despite this evidence, "no reasonable juror could conclude that, *at the time of the forcible removal of Peters's swimsuit*, doing so was *not* because of a concern that Peters needed to be protected from potentially harming herself with the strings on her swimsuit." *Peters*, ___ F. Supp. 2d at ___, 2013 WL 5775027 at *35 (emphasis in the original); *see also id.* at *38 (rejecting Peters's argument that the booking form refuted the proffered justification for stripping her); *id.* at *50 (same as to the "excessive force" claim). Peters cannot now revisit rejected contentions that the booking forms or post-incident conduct shows that there was no justification for the alleged "strip search," a claim that I have rejected, or that there was no justification for using some force to compel her compliance with the order to remove her clothing, as the only force at issue on the "excessive force" and "retaliation" claims is the alleged head "bashing." *Niver II*, 433 F. Supp. 2d at 997; *Blair*, 420 F.3d at 830.

As to Peters's assertion (offered, in appositely, in her resistance to exclusion of categories four through seven of the evidence that the Defendant Officers seek to exclude) that she should be able to present evidence that the Defendant Officers purportedly violated Department policies or procedures as evidence of retaliation, she failed to offer sufficient evidence at summary judgment to demonstrate that the Defendant Officers retaliated against her by acting in violation of procedures and policies. The only inference of "retaliatory conduct" that I found in the summary judgment record was an inference that Peters was subjected to "excessive force"

(specifically, the alleged "bashing" of her head into hard surfaces when she was not resisting) to compel compliance with the order to remove her clothing, because that evidence might suggest to reasonable jurors that the officers' actions were retaliatory, not simply to enforce the order. *Peters*, ___ F. Supp. 2d at ___, 2013 WL 5775027 at *61. Peters cannot now try to reformulate her "retaliation" claim to be based on other conduct when she did not marshal that evidence at summary judgment. Doing so would be comparable to the defendant insurer in *Niver II* attempting to rely on some "secret" evidence, not previously disclosed as the basis for the claim, and would be unfairly prejudicial to an extent that outweighs any marginal relevance that evidence might have to the questions actually at issue at trial. *Niver II*, 433 F. Supp. 2d at 997 (citing Rule 403).

Furthermore, evidence that Peters's complaints about her treatment were supposedly legitimate, in light of her after-the-fact reading of jail policies or procedures, is not an element of her "retaliation" claim, and the "credence" of her complaints is not relevant to either of her remaining claims. Indeed, her attempt to use evidence that policies and procedures that were allegedly violated were designed for her protection to help to establish her claim for damages is an attempt to recover damages for conduct that is not at issue in either her "excessive force" claim or her "retaliation" claim. *See Blair*, 420 F.3d at 830.

Where Peters's arguments have more traction is in her assertion that evidence that the Defendant Officers violated policies or regulations, specifically, policies concerning her request for medical attention, and evidence purportedly showing that the Defendant Officers knew that they violating other policies or regulations after the booking incident shows that the Defendant Officers used "excessive force" and acted

with retaliatory intent by using "excessive force," *in support of* her "free speech retaliation" claim. As I explain, *infra*, in Section II.C.9., beginning on page 38, the Defendant Officers' mental state is relevant to Peters's retaliation claim. It takes little imagination to see that evidence that the Defendant Officers did not follow policies concerning an inmate's request for medical attention suggests that the Defendant Officers were attempting to conceal the use of "excessive force" in retaliation for the inmate's complaints. There may be inferences of retaliatory intent from the post-incident violation of other policies or regulations, as well. Where properly limited as evidence to *support* elements of an "excessive force" or "retaliation" claim, rather than as evidence of conduct that was, itself, retaliatory, such evidence is not unduly prejudicial. *See, e.g, Cowling*, 648 F.3d at 699 ("Moreover, the risk of unfair prejudice was reduced by a cautionary instruction to the jury, given when the evidence was first admitted."); *Young*, 644 F.3d at 761 (concluding that the district court did not abuse its discretion in admitting evidence for the limited purpose set forth in its instruction); *Walker*, 470 F.3d at 1275 ("[A] limiting instruction [concerning proper use of evidence of a prior conviction] diminishes the danger of unfair prejudice arising from the admission of the evidence."); *see also* FED. R. EVID. 105 (requiring a limiting instruction when the court admits evidence for a limited purpose).[5]

---

[5] Evidence that Peters requested medical attention is also admissible, as evidence that she believed that she had suffered injuries from the use of "excessive force," where the degree of injury suffered by the inmate is relevant to the objective reasonableness of the force used against her, *see Peters*, ___ F. Supp. 2d at ___, 2013 WL 5775027 at *52-*54, even though Peters has asserted no separate claim for unconstitutional denial of medical attention.

Peters expressly does not resist exclusion of evidence of her application for the electronic monitoring program and her incarceration starting November 6, 2012, so that evidence will be excluded.

The Defendant Officers' Omnibus Motion is granted as to the Medical Screening Form and evidence of Peters's application for the electronic monitoring program and her incarceration starting November 6, 2012. It is denied as to evidence of alleged violations of policies or procedures offered for the purpose of showing retaliatory intent.

### 7. *Evidence from other cases*

The fourteenth category of evidence that the Defendant Officers seek to exclude is evidence, testimony, settlements, or verdicts from other cases, including, specifically, the deposition testimony of a sheriff's deputy, Officer Schwedler, who is not a defendant in this case, but who was involved in another case against the County and officers of the Sheriff's Department. The Defendant Officers argue that Peters's counsel has asserted in public statements that the Woodbury County Jail is continuing to violate the rights of female inmates. The Defendant Officers argue that Peters's counsel should be prohibited from offering evidence from other cases, because doing so will confuse the jurors and conflate the facts of unrelated cases with this case.

In response, Peters concedes that evidence that is only relevant to other cases is not admissible, she represents that she will not call Officer Schwedler to testify in this case, and she does not contest that settlements or verdicts in other cases should not be admitted. She contends, however, that the news conference that the Defendant Officers complain about was called to let the public know that, despite a large jury verdict in a related case and settlement of other cases, detainees, particularly young female

detainees, continue to be mistreated at the jail. She contends that the news conference was to make clear to the public that resources are needed to clean up the culture of abuse at the jail. She also contends that, to put the County Jail's actions into context, the Court should know that her counsel procured a large jury verdict against Linn County for a wrongful strip search in 2008 (in a case that admittedly involved no element of excessive force), and that, to date, counsel has not received a single call from any other detainee claiming to have been similarly mistreated at the Linn County Jail. She contends that, as the result of the cases against the Woodbury County Jail, her counsel has been contacted by dozens of people, almost all young women, who have similar complaints about being mistreated at the Woodbury County Jail, and that the complaints continue with at least one remaining under active consideration for the filing of a lawsuit.

Nothing Peters has argued is actually an argument for admissibility in this case of evidence from or about other actions against Woodbury County, the County Sheriff, or jail officers. The relevant factual issues on Peters's remaining claims are narrow, and Peters has pointed to no evidence from other cases that will make it more or less likely that her head was "bashed" against hard surfaces, either as the use of "excessive force," or in "retaliation" for her complaints about her treatment. Thus, evidence from or about other cases is simply not relevant, *see* FED. R. EVID. 401, nor admissible, *see* FED. R. EVID. 402, and could result in confusion of the issues, *see* FED. R. EVID. 403.

This part of the Defendant Officers' Omnibus Motion is granted.

### 8.      *Testimony of the jail administrator*

The fifteenth category of evidence that the Defendant Officers seek to exclude is the testimony of jail administrator Lynette Phillips, which the Defendant Officers

expect will be offered for the purpose of describing the injuries to Peters based on Peters's booking photos or other photos. The Defendant Officers contend that such testimony is inadmissible hearsay, because Ms. Phillips has no first-hand knowledge of Peters's appearance following her incarceration, and is not qualified as an expert to provide an opinion on injuries. They contend that Ms. Phillips's testimony is not an admission against interest, where she has never been a defendant in this case and the County and the former Sheriff are no longer defendants. Peters argues that Ms. Phillips testified that she could see injuries to Peters's face, as shown on the booking photos taken after the incident during booking on May 27, 2012. Peters also argues that the Medical Screening Form establishes that she came into the jail without any noticeable injuries. Thus, Peters argues, the testimony of Ms. Phillips is highly relevant to the causation issue, is admissible as an admission pursuant to Rule 801, and as a lay opinion, pursuant to Rule 701.

I need not reach the question of whether or not Ms. Phillips's testimony about Peters's apparent injuries is hearsay or falls within a hearsay exception as an admission of a party opponent, because it is clear from the Defendant Officers' Appendix (docket no. 67-1), 92-93, that Ms. Phillips did not see Peters directly, and has only offered statements about whether or not she saw injuries to Peters's face based on her review of photographs, which Ms. Phillips did not take; indeed, Ms. Phillips did not even know when the photographs had been taken. Her testimony about what the photographs show is not "helpful to . . . determining a fact in issue," within the meaning of Rule 701(b), concerning admissibility of lay opinions, because jurors are just as capable of determining what the photographs show as any lay witness, and, as such, that testimony is not admissible.

Therefore, this part of the Defendant Officers' Omnibus Motion will be granted.

### 9. Evidence of the Defendant Officers' mental states

The sixteenth category of evidence that the Defendant Officers seek to exclude is any statements or evidence about their mental state at the time of the May 27, 2012, incident. The Defendant Officers contend that I stated that their mental state at the time of the incident is irrelevant to the determination of whether or not "excessive force" was used, so that such evidence is not relevant, and its admission would be prejudicial and confusing. Peters responds that the mental state of the Defendant Officers is an element of her "retaliation" claim and, therefore, such evidence is relevant and admissible under Rules 401 and 402, and not inadmissible under Rule 403.

In my summary judgment ruling, I noted that "one factor that plainly is *not* relevant to the 'objective reasonableness' analysis [of an 'excessive force' claim] is *an officer's mental state*." *Peters*, ___ F. Supp. 2d at ___, 2013 WL 5775027 at *43 (emphasis in the original). On the other hand, to establish a "free speech retaliation" claim, a plaintiff must establish, *inter alia*, "a causal connection . . . between the retaliatory animus and the injury." *Small v. McCrystal*, 708 F.3d 997, 1008 (8th Cir. 2013); *Baribeau v. City of Minneapolis*, 596 F.3d 465, 581 (8th Cir. 2010). Indeed, the plaintiff must show that the retaliatory motive was the "but-for" cause of the allegedly retaliatory action. *Baribeau*, 596 F.3d at 581. Thus, evidence of the Defendant Officers' mental state is plainly relevant and admissible on Peters's "retaliation" claim, although it is not relevant on her "excessive force" claim, and the jurors will be so instructed. *See, e.g., Young*, 644 F.3d at 761 (concluding that the district court did not abuse its discretion in admitting evidence for the limited purpose set forth in its instruction).

This part of the Defendant Officers' Omnibus Motion is denied.

### 10. *The video recording of the booking incident*

The seventeenth category of evidence that the Defendant Officers seek to exclude is the video of the booking area during the May 27, 2012, incident. The Defendant Officers argue that the video does not show the inside of the holding cell, so no video footage shows the incident in which Defendant Officers allegedly "bashed" Peters's head. The Defendant Officers argue that there is no dispute, after my summary judgment ruling, about the events leading up to this alleged head "bashing," so that the video is not relevant to the remaining issues. Moreover, they argue that the evidence is prejudicial, because the lack of a microphone in the holding cell hallway, while there was one at the booking counter, will likely confuse the jury about what sounds actually came from the holding cell. Peters argues that the Defendant Officers' own characterization of this issue answers the question of its admissibility, because we do have *video of this incident*. She contends that such evidence is highly probative and admissible; indeed, she argues that it is the "best evidence" of what happened.

In my summary judgment ruling, I noted that there was a video of the booking area and holding cell hallway at the time of the incident on May 27, 2012, but I also noted that, "[u]nfortunately, the video of the hallway to the holding cells, on which both parties in part rely, does not show the inside of the holding cell in which Peters was placed, so that it does not allow me to determine beyond dispute precisely what happened, and the audio on the recording does not allow me to determine beyond dispute precisely what was said during [the incident]." *Peters*, ___ F. Supp. 2d ___, 2013 WL 5772057 at *2. The fact that the video does not allow determination of

certain issues beyond dispute does not make it irrelevant, however. As the Eighth Circuit Court of Appeals has explained,

> "The decision to admit partially inaudible audio tapes is a matter within the sound discretion of the district court." *United States v. Huff*, 959 F.2d 731, 737 (8th Cir.1992). "[T]he district court should assess whether the unintelligible portions of the tape are so substantial, in view of the purpose for which the tapes are offered, as to render the recording as a whole untrustworthy." *Id*. (internal quotation omitted). In making this determination, the district court should consider whether the tapes are "audible enough to provide the jury with the 'gist' of the conversations," as well as whether the defendant was given an "opportunity to offer his version of the inaudible portions so as to clear up whatever ambiguities the tapes might have raised." *United States v. Bell*, 651 F.2d 1255, 1259 (8th Cir.1981); *see Huff*, 959 F.2d at 737–38.

*United States v. Trogdon*, 575 F.3d 762, 765 (8th Cir. 2009). I believe that video of the booking area and the hallway to the holding cells is relevant and admissible, and not unduly prejudicial, despite the limitations on what can be seen and the possible confusion about what can be heard. *See* FED. R. EVID. 403. The burden will be on the parties to clarify, through other evidence, whatever they believe the points of confusion left by the video might be. *See United States v. Nicholson*, 815 F.2d 61, 63 (8th Cir. 1987) (considering whether the defendant was allowed the opportunity to argue to the jury his version of what was contained in inaudible portions of a recording).

This part of the Defendant Officers' Omnibus Motion is denied. Either party will be permitted to present all or whatever portions of the video they deem appropriate.

## *11.    Evidence relevant only to a dismissed issue, claim, or party*

The penultimate category of evidence that the Defendant Officers seek to exclude is evidence that is relevant only to an issue, claim, or party that I have already dismissed. They identify the evidence as including, but not limited to, the following: the testimony of Kelvin Rinzy; the testimony of Sheriff Dave Drew; the testimony of former Sheriff Glenn J. Parrett; Peters's arrest report; their response to Peters's Request For Admissions; and the sentencing order for Peters dated July 13, 2012. They contend that none of this evidence is relevant to the few remaining issues to be tried and that it would be prejudicial or confuse the jury.

In response, Peters contends that Kelvin Rinzey was present at the time of the incident and heard screams of his girlfriend, Shannon Peters, and that he will also testify that Peters had no physical injuries at the time that she was placed under arrest; that the arrest report puts the entire incident into context and shows that Peters had no visible injuries prior to being "assaulted" by the Defendant Officers; that evidence of the Defendant Officers' proffered excuse that Peters might be "suicidal" is a pretext for their true motivation, which was retaliation; and that the responses to her Request for Admissions demonstrate that the Defendant Officers did not follow through on their own pretextual excuse; and that the underlying criminal charge should be admitted to place the incident in context. Peters does not resist exclusion of the testimony of the current and former sheriff, however, and she represents that she does not intend to call either of them. She also resists exclusion of unidentified evidence.

I can only rule pretrial on the admissibility of the evidence adequately identified in this part of the Defendant Officers' Omnibus Motion. While I believe that Mr. Rinzey's testimony that he heard Peters screaming is only marginally relevant, in

the circumstances in which he heard *someone* screaming through walls in the booking area, and it is unlikely that he could tell why Peters was "screaming," I do not find that evidence to be unfairly prejudicial, particularly where the credibility of his assertion that he could tell that the screaming was from Peters may be subject to impeachment. His testimony that Peters did not have any injuries before she was booked is likely based on his first-hand observations, and is, consequently, more material and less potentially prejudicial. I will not exclude his testimony on Rule 403 grounds.

On the other hand, I do not see that the arrest report has any probative value to put the incident during booking in context or even to show that Peters had no visible injuries prior to booking, even assuming that the arrest report is not hearsay, because no hearsay objection was made. There is no dispute that Peters was arrested for violation of a no contact order, a non-violent offense, and that she was not violent and did not resist arrest. No other "context" appears to me to be relevant. Peters has not shown that the "arrest report" includes any statements about the incident during booking. The arrest report will be excluded pursuant to Rules 401 and 402. Similarly, I see no relevance of Peters's sentencing order, which was entered long after the incident on May 27, 2012, to show "context" of the incident, and it will be excluded pursuant to Rules 401 and 402.

Once again, I reject Peters's attempt to resurrect the question of "pretext" for the initial decision to remove her clothing forcibly, based, this time, on the Defendant Officers' Admissions. Again, "no reasonable juror could conclude that, *at the time of the forcible removal of Peters's swimsuit*, doing so was *not* because of a concern that Peters needed to be protected from potentially harming herself with the strings on her swimsuit." *Peters*, ___ F. Supp. 2d at ___, 2013 WL 5775027 at *35 (emphasis in the

original); *see also id.* at *38 (rejecting Peters's argument that the booking form refuted the proffered justification for stripping her); *id.* at *50 (same as to the "excessive force" claim). Likewise, that evidence does not generate any genuine issue of material fact that the Defendant Officers "retaliated" against Peters for her complaints, where no reasonable juror could conclude that, at the time of the incident, the exercise of force was *not* initially to protect Peters from harm, and I have concluded that the only evidence of retaliatory conduct on which Peters can rely is the allegation of the use of "excessive force," in the form of the alleged head "bashing." Peters cannot now change her theory of what evidence gives rise to an inference of retaliation, where she had a full and fair opportunity to point out such evidence in summary judgment proceedings and, indeed, injected the issue of the adequacy of her evidence of retaliation, despite the Defendant Officers' initial assertion that they were entitled to summary judgment on the "free speech retaliation" claim *only* on the ground that there was no evidence of speech on a matter of public concern. *Cf. Niver*, 433 F. Supp. 2d at 997. I will exclude this evidence.

I will also exclude the testimony of the current and former sheriff, which Peters does not resist and represents that she will not offer.

### 12.    *Evidence of damages for psychological injury*

The final category of evidence that the Defendant Officers seek to exclude is evidence of damages for alleged psychological injury, including the testimony of Dr. Kunal Patra, Peters's treating psychiatrist. The Defendant Officers argue that it is impossible to determine whether any psychological injury is the result of the alleged use of "excessive force" rather than Peters's preexisting psychological disorders and history, the fact that she was arrested and had to spend the night in jail, the fact that she

was (lawfully) required to undress in front of the officers, the fact that she was required to change into a paper jumpsuit, or the fact that she later had to spend time in jail for the violation of a no contact order. Peters responds that Dr. Patra is qualified to and will testify that the use of "excessive force" was a substantial factor in causing or aggravating Peters's psychological injuries.

I do not believe that the Defendant Officers have established that Dr. Patra is not qualified to offer the necessary testimony concerning the likely causes of Peters's psychological injury or that she is incapable of reliable and credible testimony about those causes. Under the circumstances, I believe that "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible [expert] evidence." *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 596 (1993).

This part of the Defendant Officers' Omnibus Motion is denied.


### III.    CONCLUSION

Upon the foregoing,

1.    Peters's November 6, 2013, Supplemental Motion In Limine (docket no. 65) is **granted**, as set out more fully, above; and

2.    The Defendant Officers' November 6, 2013, Omnibus Motions In Limine (docket no. 67) is **granted in part and denied in part**, as set out more fully, above.

IT IS FURTHER ORDERED that, to avoid exposure of potential jurors to information about disputed evidence, this ruling shall be sealed until ten days after completion of trial or any settlement, unless a party files a motion within that ten-day period showing good cause why the ruling should remain sealed.

**IT IS SO ORDERED**.

**DATED** this 5th day of December, 2013.

_Mark W. Bennett_

_____

MARK W. BENNETT
U.S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA